## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF WEST VIRGINIA
## AT ELKINS

MOUNTAIN VALLEY PIPELINE, LLC
            Plaintiff,

v.                                                    CIVIL ACTION NO 2:24-cv-12 Kleeh

JEROME JAMES WAGNER
            Defendant.

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JEROME JAMES WAGNER'S MOTION TO DISMISS UNDER RULE 41(b) OR, ALTERNATIVELY, FOR SANCTIONS UNDER RULES 37 and 16(f)

In support of his Motion to Dismiss Pursuant to Fed. R. Civ. P. 41(b) or, alternatively, for sanctions pursuant to Fed. R. Civ. P. 37(b)-(c), Fed. R. Civ. P. 16(f), and this Court's inherent authority, Defendant Jerome James Wagner ("Wagner") respectfully directs this Court's attention to the following points and authorities.

### I.    Introduction

Wagner brings this Motion to Dismiss in light of Plaintiff Mountain Valley Pipeline, LLC's ("MVP's") failure to timely prosecute this action in compliance with the requirements of Fed. R. Civ. P. 26(a), and for violation of multiple prior orders of this Court.  For over nine months, MVP failed to conduct virtually any discovery at all, including fulfilling its obligation to disclose evidence to substantiate the elements of its claims—which it still has not done.  In the alternative, dismissal is warranted as a discovery sanction under Fed. R. Civ. P. 37(c).

Although initial disclosures in this matter were due by August 19, 2024, MVP has sandbagged and prejudiced Wagner by providing untimely "supplemental" Rule 26(a) disclosures over nine months late, at the close of discovery, without any justification whatsoever. Even assuming that MVP's extensive delay in providing these "supplemental" disclosures can be attributed to negligence, in its most recent untimely disclosure, MVP announced that it was

*intentionally not producing* documents **that it intends to use at trial**, and which were subject to mandatory production under Fed. R. Civ. P. 26(a).  Under Fed. R. Civ. P. 41(b), this amounts to both a failure to prosecute this case, because MVP has failed to provide evidence that would be required to substantiate its claims, and a violation of the Court's orders.  This warrants dismissal. MVP's apparently intentional withholding of evidence, and failure to advance its claims, should not be countenanced.

This deliberate defiance of MVP's initial disclosure requirements also warrants dismissal as a sanction under Rule 37(c), especially given MVP's recent history of abusive discovery conduct in related litigation.  *See Mountain Valley Pipeline v. Tuhus*, 5:23-cv-00625, ECF No. 104 (Dec. 16, 2024) (Exhibit A), p. 2 (chastising MVP's "untimely and frivolous" motion for a protective order and finding that MVP's conduct warranted sanctions).  For the reasons set forth in detail herein, dismissal with prejudice is appropriate.

## II.   Procedural History

MVP filed its Complaint on April 30, 2024, in Webster County Circuit Court.  Compl., ECF No. 1-1.  The Complaint alleges that Wagner engaged in unlawful protest on an MVP worksite on November 2, 2023.  *Id.* ¶ 10.  The Complaint included four substantive counts— Trespass, Tortious Interference, Violation of W. Va. Code 61-10-34, and Civil Conspiracy—as well as separate "counts" for an Injunction and for Punitive Damages.  Compl., ECF. No. 1-1.[1] Wagner removed this action to this Court on June 17, 2024.  ECF No. 1.

On June 18, 2024, this Court issued an order requiring that "each party shall provide to every other party the initial discovery disclosures required under Fed. R. Civ. P. 26(a)(1) on or

_____

[1] Mr. Wagner timely filed a Motion to Dismiss ECF No. 6.  On March 3, 2025, this Court granted the motion in part and denied it in part, dismissing four (4) counts of the Complaint while permitting MVP to proceed on its Trespass and Tortious Interference counts.  ECF No. 22.

before **August 19, 2024**."  ECF No. 2, p. 2 (emphasis in original).  This order also required that the parties meet pursuant to Fed. R. Civ. P. 26(f), and file their written report on the 26(f) conference by August 1, 2024.

On August 1, 2024, the parties filed their Rule 26(f) Joint Report of Parties' Planning Meeting, reaffirming that "[t]he deadline to file initial disclosures in accordance with Fed. R. Civ. P. 26(a)(1) and L.R. Civ. P. 26.01(a) shall be August 19, 2024."  ECF No. 16, p. 1.  This Report indicated the parties' agreement "to "produce documents in PDF format or, upon request, native format."  *Id.*, p. 2.  Along with the Report, the parties submitted a proposed Scheduling Order calling for completion of discovery by May 26, 2025.  ECF No. 16-1.

When the parties exchanged their initial disclosures on August 19, MVP's initial disclosures (Exhibit B) proclaimed a "preliminary computation of damages identif[ying] $18,744.81 in salaries, wages, and other expenses" without further specification.  MVP's disclosures did not list any witnesses likely to have discoverable information regarding MVP's allegation of economic damage.  *See id.*; Fed. R. Civ. P. 26(a)(1)(A)(i)).  MVP's initial disclosures likewise did not list or include any documents, ESI, or tangible things supporting its allegation of economic damage.  *See* Exhibit B; Fed. R. Civ. P. 26(a)(1)(A)(ii).[2]  With no witnesses or documents to substantiate MVP's claims of damages, Wagner had no need to pursue discovery on this critical element of MVP's claims.

On August 20, 2024, this Court issued its Scheduling Order, setting the "Completion of

---

[2] MVP's initial disclosures also did not include a copy or description by location of any documents, ESI, or tangible things.  *See* Exhibit B, p. 2; Fed. R. Civ. P. 26(a)(1)(A)(ii).

MVP's initial disclosures listed four (4) documents (or categories of documents) that it "anticipate[d] relying on"—none of which appear to support its allegations of economic damage—and stated that "once a determination is made, [MVP] will coordinate with counsel as to the manner in which the information will be exchanged[.]"  Exhibit B, p. 2.

Discovery" deadline for May 26, 2025.  ECF No. 19, p. 1.  With respect to this deadline, the

Scheduling Order clarifies:

> All discovery shall be completed by **May 26, 2025.**  "Completed discovery" as
> used in Fed. R. Civ. P. 16(b) means that within the time limits set, all discovery,
> objections, motions to compel, and all other motions and replies relating to
> discovery in this civil action have been filed, and the party objecting or
> responding has had sufficient time under the Federal Rules of Civil Procedure to
> make responses.  The term "all discovery" in the preceding definition of
> "completed discovery" includes the disclosures required by Fed. R. Civ. P.
> 26(a)(1) and (2) but does not include the disclosures required by Fed. R. Civ. P.
> 26(a)(3). . . .
>
> The conduct of any discovery which would require a later time limit shall be
> permitted only on the order of the Court or by filed stipulation of the parties, and
> only in cases that will not be delayed for trial thereby.

ECF No. 19, pp. 3-4 (emphasis in original).

The Scheduling Order states that "the time limitations set forth above shall not be altered

except as set forth in L.R. Civ. P. 16.01(f)."  ECF No. 19, p. 12.  The Scheduling Order further

advises the parties as follows:

> **FAILURE ON THE PART OF COUNSEL . . . TO COMPLY WITH THE
> REQUIREMENTS OF THIS ORDER WILL SUBJECT THE PARTY OR
> ATTORNEY TO APPROPRIATE SANCTIONS UNDER THE RULES
> AND MAY RESULT IN DISMISSAL OR STRIKING OF ALL
> PLEADINGS OF THE FAILING PARTY OR PERSON**

ECF No. 19, p. 12 (emphasis in original).

Despite the leisurely amount of time granted by the Court to complete discovery in this

case, with the exception of the initial disclosures provided on August 19, 2024, MVP did not

conduct any discovery at all for more than nine months.  On April 25, 2025, MVP finally served

its First Set of Discovery Requests to Wagner.  Still, however, MVP did not supplement its

mandatory initial disclosures to provide any witnesses, documents or other evidence that could

substantiate its damages calculation.

On May 27, 2025—the day after the deadline for completion of written discovery,[3] and more than nine months after the deadline for initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1)—MVP's counsel contacted defense counsel and stated: "In looking to respond to discovery today we realized we don't have a protective order entered in this case." May 27, 2025, "Wagner Discovery Responses" Email Thread (Exhibit C). MVP sought defense counsel's consent to entry of a stipulated protective order. Exhibit C.

Counsel conferred via telephone that afternoon. As memorialized in the May 27, 2025, email thread, defense counsel did **_not_** agree to the protective order requested by MVP, but offered to consider a more limited and narrowly tailored protective order.[4] Exhibit C. During this conferral, defense counsel also clarified to MVP that, other than the documents specifically listed in MVP's original Initial Disclosures provided on August 19, 2024, Wagner would **_not_** agree to accept as timely any withheld documents at a later date. Exhibit C.

MVP neither moved for a protective order nor proposed a more narrowly tailored protective order to address defense counsel's concerns. Instead, on the evening of May 27, 2025, MVP served Wagner with Plaintiff's Supplemental Rule 26(a)(1) Initial Disclosures (Exhibit D). These "supplemental" disclosures listed three previously undisclosed witnesses including, as

---

[3] The parties stipulated to a limited extension of discovery to allow both sides to take depositions until July 31, 2025. ECF No. 29. In so stipulating, the parties confirmed their intention that "the May 26, 2025 discovery deadline shall otherwise remain in effect." *Id.*

[4] MVP was not entitled to rely on an expectation that Wagner would consent to any protective order that the company proposed; MVP could have moved the Court for such an order at any time during discovery if it believed this was necessary in order to comply with its Rule 26(a) obligations. And defense counsel was justified in not immediately agreeing to MVP's proposal. Among other reasons, defense counsel was uncomfortable agreeing to a protective order allowing blanket confidentiality designations in light of MVP's significant overuse of such designations in related litigation. In that matter, defense counsel was unable to obtain a timely response from MVP's counsel to lift the confidentiality designation from a document needed for filing with the Court. Counsel will provide documentation of this exchange if helpful.

most relevant here, Jeff Klinefelter, VP, MVP Construction and Engineering, who was identified as having "knowledge regarding damages incurred as a result of incidents that form the basis of Plaintiff's Complaint."  Exhibit D, p. 2.  This was the first time that MVP had disclosed any witness to whom knowledge of MVP's damages was attributed.

Even at this late date, MVP still withheld evidence.  MVP disclosed the *existence* of six previously undisclosed documents or categories of documents including, as most relevant here, "Master Service Agreements with third party contractors" and "[i]nvoices evidencing delay damages from the day of the protest[.]"  Exhibit D, pp. 2-3.  Again, this was the first time MVP had even suggested that it had any documents to substantiate its damages.  But MVP still refused to produce these documents or allow Wagner to inspect and copy them.

MVP explained its decision not to produce these (and most other) documents as follows:

> Plaintiff sought to produce items detailed below prior to the close of discovery and pursuant to the entry of a protective order.  Plaintiff proposed a protective order previously agreed to be Defense Counsel in a different MVP Protester case.  Despite this, Defense Counsel would not agree to the entry of a protective order and therefore the documents were not produced.  Plaintiff lists them here to preserve their right to use them at trial.

Exhibit D, p. 2.  Plaintiff's entire Fed. R. Civ. P. 26(a) document production (Exhibit E) consisted of five photographs.[5]

As of the date of filing, nearly three weeks later, MVP has not moved for a protective order, produced any additional documents, or moved to modify the Scheduling Order to permit

---

[5] The documents withheld from production on the basis that Wagner declined to consent to MVP's proposed protective order include: 1) criminal complaint(s) involving Wagner; 2) Land Lease/Property agreements related to the Subject Property; 3) a map; 4) contracts; 5) invoices; 6) portions of the Fiscal Responsibility Act; and 7) portions of the FERC Certificate authorizing the Mountain Valley Pipeline project.  At a minimum, Nos. 1, 6, and 7 should be public documents; it is unclear how they could plausibly warrant consideration of a confidentiality designation, or be withheld on this basis.

what would otherwise be an untimely motion for protective order and/or production of discovery. This motion follows.

### III.    Argument

#### A.  **This Court should dismiss the complaint for failure to prosecute and to comply with the Scheduling Order and the Federal Rules of Civil Procedure.**

"Under Federal Rule of Civil Procedure 41(b), a court may dismiss a civil action upon motion of a defendant if a 'plaintiff fails to prosecute or to comply with these rules or a court order.'" *Dobbs v. Consol. Coal Co.*, No. 5:14CV2, 2014 WL 4385877, at *2 (N.D.W. Va. Sept. 4, 2014). "[A]s dismissal is a severe sanction, dismissal under circumstances of failure to prosecute 'must be tempered by a careful exercise of judicial discretion.'" *Id.* (quoting *Bush v. USPS*, 496 F.2d 42, 44 (4th Cir. 1974)). Dismissal for failure to prosecute "generally is allowed only 'in the face of a clear record of delay or contumacious conduct by the plaintiff.'" *Id.* That standard is met here. MVP utterly failed to prosecute this case over more than nine months, has still failed to produce documents necessary to substantiate elements of its case, and has violated multiple court orders in deliberately failing to provide initial disclosures as required by both the Federal Rules of Civil Procedure and this Court's orders.

First, MVP has literally failed to prosecute this case. The Court allowed ten months[6] for discovery in a case about a single incident on one day. For over nine months, MVP did essentially nothing. Then, at the end of this period, MVP provided inadequate disclosures that it should have provided at the beginning. To be sure, Wagner also did not propound discovery during this period until receiving a request from MVP—but as the defendant, Wagner was preparing to respond to MVP's disclosures, seeing how the company would prove up its case.

---

[6] MVP was entitled to serve discovery requests upon Wagner following the parties' July 18, 2025, 26(f) conference, and was entitled to serve early Rule 34 requests prior to that date. *See* Fed. R. Civ. P. 26(d).

One of the key issues in this case has always been MVP's claims of damages; Wagner has always believed that MVP suffered no legally relevant damages.  MVP's failure to identify any witnesses or documents substantiating its damages confirmed Wagner's defense.

Second, MVP has violated Rule 26(a) in multiple ways.  That rule required MVP to, "without awaiting a discovery request, provide to" Wagner information including contact information for "each individual likely to have discoverable information—along with the subjects of that information" that MVP might "use to support its claims"; copies of "all documents, electronically stored information, and tangible things" that MVP "may use to support its claims"; and "a computation of each category of damages claimed by" MVP, "who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material . . .  on which each computation is based[.]" Fed. R. Civ. P. 26(a)(1)(A).  MVP failed to comply with this rule.

There is a clear record of MVP's repeated—and, in at least one instance, intentional—failure to comply with the Fed. R. Civ. P. 26(a) and this Court's orders.  The Court ordered completion of "initial discovery disclosures required under Fed. R. Civ. P. 26(a)(1) on or before **August 19, 2024**."  ECF No. 2, p. 2 (emphasis in original).  The Court later issued another order adopting the parties' recommendation that discovery be completed by May 26, 2025.  ECF No. 19, pp. 3-4.  Notwithstanding these orders, MVP waited until May 27, 2025—more than nine months after the Court-imposed deadline for initial disclosures and after the deadline for completion of written discovery had already expired—to provide its "supplemental" Fed. R. Civ. P. 26(a) disclosures. These "supplemental" disclosures included MVP's sole listed witness regarding damages incurred, as well as six previously undisclosed documents or categories of documents, including two previously unlisted categories of documents that MVP ostensibly

seeks to use to support its damages claims.  As the initial disclosure deadline was more than nine

months after the alleged events of November 2, 2023, which gave rise to this litigation, it is

implausible that the untimely-listed witnesses and documents were not "reasonably available to"

MVP so as to mandate their disclosure by August 19, 2024.  *See* Fed. R. Civ. P. 26(a)(1)(E).

Moreover, at no point has MVP ever provided a computation of damages as required by

Fed. R. Civ. P. 26(a)(1)(a)(iii).  *See In re Randolph Hospital, Inc.*, No. 20-10247, 2024 WL

2747058, at *3 (M.D.N.C. May 17, 2024) (internal quotations omitted) ("A litigant's Rule

26(a)(1)(A)(iii) damages computation must be more than a lump sum figure . . . and instead must

state the types of damages that the party seeks, must contain a specific computation of each

category, and must include documents to support the computations.").

MVP's unexplained, extensive delay in completing initial disclosures is itself sufficient to

demonstrate it substantial noncompliance with Fed. R. Civ. P. 26(a) and this Court's discovery

and scheduling orders (ECF No. 2, p. 2 and ECF No. 19, pp. 3-4).  Here, MVP has waited until

*after* the close of discovery to make the disclosures that were required of it at the start of

discovery, precisely because such initial disclosures inform the discovery that follows.  There is

simply no justification for such conduct.

Even if its extreme untimeliness with respect to its initial disclosure obligations could be

attributed to mere negligence, MVP's admittedly intentional decision to unilaterally withhold

from production documents subject to mandatory disclosure—without even moving for the

protective order that MVP claims is necessary—is particularly contumacious.  There is no doubt

that MVP purposefully withheld documents subject to mandatory disclosure without adequate

justification when making its "supplemental" disclosures on May 27, 2025.  *See* Exhibit D, p. 2

(explaining that MVP "sought to produce" the documents subject to mandatory disclosure by

Fed. R. Civ. 26(a) "prior to the close of discovery" but that, because Wagner did not consent to the untimely entry of a protective order, "the documents were not produced").[7]  It should go without saying that MVP was not excused from completing its mandatory disclosures simply because it believed it was entitled to a protective order that, *after* the close of written discovery *and one year after removal*, it has never asked this Court to enter.

In this case, MVP's conduct constitutes both a failure to prosecute and a violation of this Court's orders, justifying dismissal.  This motion does not involve a discovery disagreement arising from a request from Wagner to MVP or vice versa.  Instead, MVP has both utterly neglected (and with respect to multiple categories of documents, admittedly intentionally defied) its obligation to timely and automatically disclose and produce certain information and evidence that it may use at trial, regardless of any formal discovery request from the defense.  Under these circumstances, it is appropriate for this Court to exercise its discretion under Fed. R. Civ. 41(b) and dismiss the Complaint against Wagner with prejudice due to MVP's failure to prosecute and failure to comply with Fed. R. Civ. P. 26(a) and this Court's June 18, 2024, and August 20, 2024 orders (ECF No. 2, p. 2 and ECF No. 19, pp. 3-4).

B.  **Alternatively, this Court should issue sanctions up to and including dismissal with prejudice pursuant to Rule 37(b)-(c), Rule 16(f), and this Court's inherent authority.**

1.  <u>MVP's bad-faith conduct warrants a severe sanction of dismissal with prejudice.</u>

Alternatively, this Court should dismiss the Complaint with prejudice pursuant to Fed. R. Civ. P. 37(b)-(c), Fed. R. Civ. P. 16(f), and/or this Court's inherent authority.

Rule 37(b)(2)(A) allows sanctions for discovery misconduct, up to and including

---

[7] Of course, if MVP had produced the documents on May 27, 2025—as it purportedly intended to do had Wagner agreed to a protective order—this would not have been a production "prior to the close of discovery" despite MVP's inaccurate characterization to contrary.

"dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(v). Rule 37(b) sanctions may be justified under Rule 37(c), which provides that if a party fails to make its required Rule 26(a) disclosures, "the court, on motion and after giving an opportunity to be heard . . . may order payment of the reasonable expenses, including attorney's fees, caused by the failure," and "may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)"—*i.e.*, including dismissal. Fed. R. Civ. P. 37(c)(1). Similarly, Rule 16 provides that "if a party or its attorney . . . fails to obey a scheduling or other pretrial order," then "the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii)"— again, including dismissal. Fed. R. Civ. P. 16(f)(1)(C).

Before imposing an extreme discovery sanction such as dismissal or default judgment, the Fourth Circuit has directed courts to consider four factors: (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice its noncompliance caused its adversary, which necessarily includes an inquiry into the materiality of the evidence it failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions. *Branch Banking & Tr. Co. v. TLS, Inc. WV*, No. 1:15CV147, 2016 WL 1521271, at \*2 (N.D.W. Va. Mar. 24, 2016) (citing, *e.g.*, *Belk v. Charlotte Mecklenburg Bd. of Educ.* 269 F.3d 305, 348 (4th Cir. 2001)), *report and recommendation adopted*, No. 1:15CV147, 2016 WL 1452411 (N.D.W. Va. Apr. 13, 2016). Only "the most flagrant case[s], where the party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules, will result in the extreme sanction of dismissal or judgment by default." *Branch Banking*, No. 1:15CV147, 2016 WL 1521271, at \*2 (quoting *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989).

In this case, consideration of the four factors set forth in *Branch Banking*/*Belk* supports

the sanction of dismissal:

- **Factor No. 1** – *whether the noncomplying party acted in bad faith*

"In [the Fourth] Circuit, bad faith includes willful conduct, where the party 'clearly should have understood his duty to the court' but nonetheless 'deliberately disregarded' it." *Axiom Res. Mgmt., Inc v. Alfotech Sols., LLC*, No. 1:10-cv-1011, 2011 WL 2560096, at \*7 (E.D. Va. June 3, 2011) (quoting *Rabb v. Amatex Corp.*, 769 F.2d 996, 1000 (4th Cir. 1985)).  Here, if MVP did not understand its duty to comply with the requirements of Fed. R. Civ. P. 26(a) and this Court's orders governing the timeframe for initial disclosures and completion of discovery, at the very least, it clearly should have understood this duty.  Most egregiously, MVP's explanation for its decision to withhold documents subject to the mandatory disclosure requirements of Fed. R. Civ. P. 26(a) from the defense epitomizes willful conduct in deliberate disregard of its discovery duties.  *See* Exhibit D, p. 2.

This is not a case involving a wayward *pro se* litigant who has simply made a mistake, a hapless and unsophisticated client who has been misled by its counsel, or a resource-strapped defendant who has been involuntarily haled into court.  MVP is a multibillion dollar venture and is represented in this litigation by a well-established and highly experienced firm.  MVP's informed choice of unlawful litigation tactics here—i.e., to intentionally defy its obligations under Fed. R. Civ. P. 26(a)—should be treated as such and sanctioned accordingly.

- **Factor No. 2** – *the amount of prejudice its noncompliance caused its adversary, which necessarily includes an inquiry into the materiality of the evidence it failed to produce*

If MVP were permitted to proceed with its efforts to seek monetary damages from Mr. Wagner despite the lack of compliant and timely discovery, the prejudice associated with its discovery malfeasance would be significant.  MVP's untimely disclosures—and, in the case of documents, nondisclosures—relate to highly material witnesses and documents that go to the

very core of MVP's allegations of Trespass, Tortious Interference, and economic damage.

Wagner was "entitled to presume" that MVP understood and complied with Fed. R. Civ.

P. 26(a)(1). *See Smith v. Aurora Pub. Sch.*, 318 F.R.D. 429, 432 (D. Colo. 2016). Between

August 19, 2024, and May 26, 2025, as he was entitled to do, Wagner relied on MVP's Fed. R.

Civ. P. 26(a)(1) disclosures and "plan[ned] [his] discovery strategy accordingly." *See Smith*, 318

F.R.D. at 432. Had MVP's "supplemental" initial disclosures been timely provided, Wagner

would have approached written discovery entirely differently. Initial disclosures must be made

initially precisely because they inform what discovery may be required next in response. The

prejudice to Wagner of allowing "supplemental" initial disclosures to be made *after* the close of

discovery cannot be understated. As this Court's colleague in this Southern District of West

Virginia has explained:

> Procedural Rules and deadlines—which are set well in advance—allow parties,
> counsel, and the Court to manage workloads and ensure that all cases are
> addressed efficiently. The Defendant cannot fully prepare for trial without
> pretrial disclosures and filings. The Plaintiff's delay in making those disclosures
> shortens the time available to prepare before the trial date, which causes prejudice
> to the Defendant—who, like the Plaintiff, has other obligations that she and her
> counsel must balance with this case.

*Folse v. McCormick*, No. 2:22-cv-00435, 2024 WL 3085143, at *4 (S.D.W. Va. June 21, 2024);

*see also*, *e.g.*, *EQT Prod. Co. v. Magnum Hunter Prod. Inc.*, No. 5:16-CV-150-JMH-REW, 2017

WL 2295906, at *4 (E.D. Ky. May 25, 2017), *objections overruled sub nom. EQT Pord. Co. v.*

*Magnum Hunter Prod. Co.*, No. 5:16-CV-150-JMH, 2017 WL 4974782 (E.D. Ky. July 19,

2017):

> Harm should be assessed based on the realities of the situation, the case status,
> and the schedule. Thus, in almost every situation of nondisclosure, a court willing
> to move mountains could fashion a remedy to mitigate harm. That might mean
> re-writing the schedule, reopening discovery, and shifting all resulting costs to the
> offending party. The Court does not view theoretical mitigation, only by major
> surgery on case posture, as fairly contemplated by the harm assessment. In other

words, if the nondisclosure would require significant compromise in the status and schedule of a case, or would require consequential management in terms of discovery costs, burdens, and sequence, then the failure to disclose has indeed caused harm beyond the unilateral curative powers of any party.

- *Factor No. 3 – the need for deterrence of the particular sort of noncompliance*
  MVP's "willful noncompliance requires deterrence." *Branch Banking*, No. 1:15CV147,

2016 WL 1521271, at \*3. In addition to MVP's generally grossly negligent approach with

respect to the requirements of Fed. R. Civ. P. 26(a) and this Court's scheduling and discovery

orders, MVP elected to intentionally ignore Fed. R. Civ. P 26(a)'s production requirements while

making its inadequate twelfth-hour disclosures. "Permitting such conduct to continue

undermines both this Court's judicial power and the Federal Rules of Civil Procedure.

Accordingly, deterrence is needed to ensure such behavior does not happen again." *Branch

Banking*, No. 1:15CV147, 2016 WL 1521271, at \*3.

- *Factor No. 4 – the effectiveness of less drastic sanctions*
  Finally, less drastic sanctions would not be effective. "Staying the proceedings pursuant

to subsection (iv)"—or otherwise attempting to mitigate the prejudice to Wagner by permitting

additional discovery or any other potential remedy involving delay—"would be ineffective

because a stay would condone the delay that Defendants' noncompliance caused." *See Branch

Banking*, No. 1:15CV147, 2016 WL 1521271, at \*3. Although the Court could elect to strike

MVP's untimely disclosures as an alternative to dismissal and prohibit MVP from using the

untimely disclosed witnesses and documents, *see* Section IV(b), *supra*, doing so ultimately

"would have the same effect as [dismissal] thus ending the case." *See Branch Banking*, No.

1:15CV147, 2016 WL 1521271, at \*3. Striking MVP's untimely disclosures and excluding

evidence accordingly would effectively set this case on a clear but somewhat extended path

14

towards ultimate dismissal.[8]  Given the flagrancy of MVP's disregard for its disclosure obligations, this Court should simply pull the plug now.

Moreover, this is not the first instance of MVP's discovery malfeasance in the course of its widespread anti-protester litigation.  Just six months ago, in related litigation involving the same counsel, MVP was chastised for filing an eleventh-hour protective order motion that the Court found to be sufficiently "untimely and frivolous" so as to warrant sanctions.  *Tuhus*, 5:23-cv-00625, ECF No. 104 (S.D.W. Va. Dec. 16, 2024) (Exhibit A), p. 2.  Notwithstanding what should have been a stark warning to MVP that it is required to engage in diligent and forthright discovery practices, its pattern and practice of untimely and unjustifiable discovery behavior in protest-related cases has continued in the instant litigation.  More severe sanctions are apparently required for MVP to get the message that compliance with its discovery obligations pursuant to the Federal Rules of Civil Procedure and the orders of United States District Courts is not optional.

> 2.  <u>At a minimum, MVP cannot use any untimely-disclosed evidence, and cannot seek economic damages.</u>

At a minimum, this Court should prohibit MVP from using any untimely disclosed witnesses and documents, and from seeking economic damages, in this litigation.  The default rule under Rule 37(c) is that a failure to disclose means that "the

---

[8] If this case goes forward, Wagner will be forced to spend significant time and energy litigating claims for relief that cannot succeed based on the evidence set forth in MVP's initial disclosures, as there would be no evidence of damages.  To the extent any of the undisclosed or untimely disclosed witnesses and/or documents will be permitted into evidence, Wagner will then be forced to seek to re-open the discovery window and potentially seek to push back all other deadlines to allow him to engage in the appropriate, tiered discovery practices that he would have engaged in beginning in August 2024, had MVP diligently complied with this Court's June 2024, order mandating completion of initial disclosures by August 19, 2024.  This would itself be harmful and prejudicial.  *See*, *e.g.*, *Folse*, No. 2:22-cv-00435, 2024 WL 3085143, at \*4; *EQT Prod. Co.*, No. 5:16-CV-150-JMH-REW, 2017 WL 2295906, at \*4.

party is not allowed to use that information or witness to supply evidence on a motion, at

a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed.

R. Civ. P. 37(c)(1).

While district courts have "broad discretion" to determine whether a nondisclosure of

evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis,

the Fourth Circuit has set forth five factors that should generally be considered:

> (1) the surprise to the party against whom the evidence would be offered; (2) the
> ability of that party to cure the surprise; (3) the extent to which allowing the
> evidence would disrupt the trial; (4) the importance of the evidence; and (5) the
> non-disclosing party's explanation for its failure to disclose the evidence.

*Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).

This Court is "not *required* to tick through each of the *Southern States* factors."  *Wilkins v.*

*Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014) (emphasis in original) (noting that the Court's

use of the word "should"—not "shall"—in *Southern States* indicates a suggested or

recommended, rather than mandatory, course of action).  Further, "[t]he burden of establishing

these factors lies with the nondisclosing party[.]"  *Id.*

As extensively argued above, MVP's failure to timely provide a list of witnesses,

documents, and an adequate damages computation by this Court's August 19, 2024, deadline for

initial disclosures was not substantially justified, and was not harmless.  Similarly, MVP's

intentional decision to not produce documents subject to mandatory disclosure was not

substantially justified, and was not harmless.

MVP has failed to timely identify any witnesses or documents with purported knowledge

or purported evidence of damages, failed to produce any documents to substantiate its claim of

damages, and failed to produce a computation of damages.  Accordingly, MVP should be

prohibited from introducing any evidence as to economic damages.  Even if the Court does not

16

dismiss this case for failure to prosecute or as a sanction, the preclusion of economic damages evidence may entail that some claims must be dismissed; trespass and tortious interference each contain a damages element that cannot be established based on the documents and witnesses listed in MVP's original August 19, 2024, initial disclosures.  While dismissal is appropriate, a lesser sanction would be striking MVP's request for damages in full and permitting MVP to seek injunctive relief only.

IV.    **Conclusion**

For the foregoing reasons, Wagner respectfully requests that his motion to dismiss be granted.  Wagner further requests attorney's fees pursuant to Fed. R. Civ. P. 16(f)(2) and Fed. R. Civ. P. 37(b)-(c), that Wagner be excused from participating in a deposition or any other further discovery processes pending disposition of this Motion, and that the Court issue any other relief necessary or appropriate to address the violations of Fed. R. Civ. P. 26(a) and this Court's orders set forth herein.

Respectfully submitted,

**JEROME JAMES WAGNER**

/s/ Jonathan Sidney
Jonathan Sidney
*Pro Hac Vice*
Colorado Bar No. 52463
Ohio Bar No. 0100561
Climate Defense Project
P.O. Box 97
Forest Hill, WV
Email: jsidney@climatedefenseproject.org
Telephone: (510) 318-1549

/s/ William V. DePaulo
William V. DePaulo, Esq. #995
860 Court Street North, Suite 300
Lewisburg, WV 25901
Phone: (304) 342-5588
Fax: (866) 850-1501
William.depaulo@gmail.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF WEST VIRGINIA**
**AT ELKINS**

MOUNTAIN VALLEY PIPELINE, LLC
      Plaintiff,
  v.                            CIVIL ACTION NO 2:24-cv-12 Kleeh

JEROME JAMES WAGNER
        Defendant.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading was filed electronically via the CM/ECF system with the Clerk of the Court, this 16th day of June, 2025, and thereby served on Counsel for the Plaintiff as follows:

Timothy M. Miller, Esq.  #2564
Matthew S. Casto, Esq. #8174
Robert M. Stonestreet, Esq. #9370
Jennifer J. Hicks, Esq. #11423
Austin D. Rogers, Esq. #13919
BABST CALLAND, P.C.
300 Summers Street, Suite 1000
Charleston, WV 25301
Tel: 681-205-8888
Fax: 681-205-8814

/s/William V. DePaulo
William V. DePaulo

18